Index No. 1:20-cv-04008-MKV

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x

In Re: AN FRIEDA DIAMONDS, INC.,


RONI RUBINOV and NEW LIBERTY
PAWN SHOP, INC.,

Appellants.
-------------------------------------------------------------------x

# APPEAL FROM ADVERSARY PROCEEDING DECSION RENDERED IN THE UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF NEW YORK

# APPELLANTS' REPLY BRIEF

Akiva Shapiro Law, PLLC
Akiva Shapiro, Esq.
Attorney for Appellants
1 West Park Drive
Old Bethpage, NY 11804
Mailing Address:
696 Old Bethpage Rd #540
Old Bethpage, NY 11804
Phone: (347) 435-6529
Fax: (347) 710-2543
Akiva@AkivaShapiroLawPLLC.com

October 22, 2020

**TABLE OF CONTENTS**

I.  REPLY ARGUMENT ......................................................................................................1

    A.    There is no basis for personal liability against Roni Rubinov. ................................1

    B.    Section 541(b)(8) of the Bankruptcy Code Protects NEW LIBERTY's secured interest in the pawned diamonds. ........................................................................2

    C.    VNB's UCC filing did not establish a priority claim over specific diamonds pawned to NEW LIBERTY in any case. ........................................................3

    D.    The evidence did not establish that AN FRIEDA was the rightful owner of the diamonds. Rather the evidence either was inconclusive or tended to demonstrate that the diamonds were owned by the debtor's principal, Ronen Konfino or his wife, personally, or were on "Memorandum" owned by third party consignors, and not subject to VNB's security interest. .....................................6

        1.    Non-Memorandum Diamonds ........................................................................6

        2.    Memorandum Diamonds ................................................................................7

II. CONCLUSION .............................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Cortlandt St. Recovery Corp. v Bonderman*,
  31 NY3d 30, 47-48 [2018] ..................................................................................1, 2

*In re Adams' Estate,*
  159 Misc 827, 829 [Sur Ct 1936] ...........................................................................4

*Smith v Mixon*,
  788 F2d 229, 232 [4th Cir 1986] ............................................................................9

*United States v Lax*,
  414 F Supp 3d 359, 368 [EDNY 2019] ..................................................................2

**Statutes**

11 U.S.C. § 541(b)(8) ....................................................................................................2

N.Y. Gen. Bus. Law § 44(3) ............................................................................. 7, 8, 10

NYUCC 1-201(9) ...........................................................................................................4

## I.     REPLY ARGUMENT

### A.     There is no basis for personal liability against Roni Rubinov.

Appellee does not dispute that it bears a "heavy burden of showing that the corporation was dominated as to the transaction attacked and that such domination was the instrument of fraud or otherwise resulted in wrongful or inequitable consequences" in order to pierce the corporate vail, as argued by Appellants citing to *Cortlandt St. Recovery Corp. v Bonderman*, 31 NY3d 30, 47-48 [2018]. (Appellee's Brief, Section A). Instead Appellee attempts to recast Appellants' argument as one of "alter ego," but Appellee misses the point of *Cortlandt*.

In sum, as argued by Appellants, the mere fact that NEW LIBERTY operated through a human being, RR, even if wrongdoing is found, does not in and of itself establish sufficient cause to pierce the corporate veil and attach personal liability on his part. Dispositively, there are no allegations of specific misuse of the corporate form for the purpose of defrauding VNB or any creditors, there are no allegations of deceptive business practices or violations of the NY General Business Law. Importantly, the mechanism by which RR and/or NEW LIBERTY disposed of the collateral is immaterial to the tort of conversion.

The lower court's finding that because RR controlled and actively misrepresented what happened to the collateral, he should be liable for it, even if true, which RR does not concede, stands far apart from the level of corporate misuse necessary to impose personal liability on a corporate owner under *Cortland*. At most,

there was merely a finding of an improper or bad faith act, which is insufficient under *Cortlandt,* and *United States v Lax*, 414 F Supp 3d 359, 368 [EDNY 2019]. As well, there was no finding of "the existence of a corporate obligation and that defendant 'exercised complete domination and control over the corporation and 'abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice.'"

### B.     Section 541(b)(8) of the Bankruptcy Code Protects NEW LIBERTY's secured interest in the pawned diamonds.

There is much confusion in Appellee's argument in this section. Appellee argues that Section 541(b)(8) is "not relevant to the Bankruptcy Court's determination.". (Appellee's Brief, Section B).  But in the same breath, he argues that because VNB was a secured creditor and was not given notice of the collateral foreclosure which would have given it opportunity to redeem the collateral under Section 541(b)(8) prior to the redemption period (see Appellee's Brief, pages 14-15 and FN 3), a conversion took place, and Appellant has only "itself to blame." (*Id.* at 15).

Appellee misses the point. Appellants' argument is that Section 541(b)(8) is relevant, and that because of it, as a threshold matter, the pawned items were not property of the estate, and protection for pawnbrokers is exactly why Section 541(b)(8)` was enacted. Furthermore, if Appellee had redeemed the pledges during the automatic stay period, it would have been entitled the collateral and NEW LIBERTY would have been made whole.

> Even the bankruptcy court admitted this:
>
> > **Here, however, if New Liberty had simply held the diamonds and other property and had never transferred them, then under section**

> **541(a)(8) of the Bankruptcy Code those items would not even have been considered property of the estate unless the Trustee first paid the redemption prices.** I do not believe it is a sound interpretation of the relevant sections of the Bankruptcy Code to say that the pawned items were subject to a redemption obligation – and would not even have constituted property of the estate unless the Trustee paid what was owed to New Liberty – but that the "transfer" of such property somehow frees the Trustee from that redemption condition, and somehow allows the Trustee to bring the property (or its value) into the estate while at the same time dishonoring the obligations owed to the pawnbroker.

In sum, the axiom of 541(b)(8) applied here is that pawned collateral, if unredeemed, is **not** property of the estate, but, if redeemed, **is** property of the estate subject to VNB's secured senior claim (and if so redeemed, then NEW LIBERTY is no longer a creditor). Either way, NEW LIBERTY is protected by the statute. NEW LIBERTY either gets to keep the unredeemed pledges or is paid the proper redemption price and turns over the pledges in exchange.

### C. VNB's UCC filing did not establish a priority claim over specific diamonds pawned to NEW LIBERTY in any case.

Appellee argues that the VNB UCC filing established a priority claim over the specific collateral pawned to NEW LIBERTY. (Appellee's Brief, Section B). Appellee cites the full text of the Security Agreement between VNB and the debtor. (*Id.* p. 16, FN 4). However, that full text is not part of the trial analysis. As noted by Appellants, the Pretrial Order was explicit in stating:

> The pleadings are deemed amended to embrace the following, and only the following, contentions of the parties. *** [The VNB] security agreement provided, in relevant part, that **the sales or transfers of inventory which were made in the ordinary course of business would be free and clear of the liens of Valley National Bank** but that sales not in the ordinary course of business would not be free of such security interest. (Docket #145, ¶ IV(A)(12)) (emphasis added).

As argued by Appellants, the Bankruptcy Court did not make any finding that the transfer of the diamonds from the debtor to NEW LIBERTY was made in any way other than the ordinary course of business. (Docket #160).

Appellee's only argument in opposition is a citation from NYUCC 1-201(9), saying: "Thus, 'A person that acquires goods ... as security for .... A **money debt** is not a buyer in ordinary course of business.'" (Appellee's Brief, page 16) (emphasis added).

NYUCC 1-201(9), however, is inapplicable. It is well established that "[t]he amount loaned on the pawned rings was not a debt of the decedent (Surrogate's Court Act, § 314, subd. 3), and is not a valid claim against her estate." *In re Adams' Estate*, 159 Misc 827, 829 [Sur Ct 1936]. And the lower court corroborated that this proposition is undisputed between the parties:

> The parties agree that under New York law a person who obtains a loan from a pawnbroker has no legal obligation to repay the loan and no legal obligation to redeem the pawned item. The pawnbroker's sole recourse, if the item is not redeemed, is to sell the collateral. In that case the pawnbroker has no personal claim against the pledgor; it only has a claim against the pledged property.

(Docket # 160, page 11-12).

Dispositively, As there is no legal obligation to redeem the pawned item and no legal obligation to repay the loan, and no personal claim against the pledgor, the loan cannot be a money debt.

Returning to the full text of the Security Agreement, even if the full text was admitted, which is not the case pursuant to the Pretrial Order, the full text does not support Appellee's position. Appellee emphasizing the following latter clause in his full text citation:

> excluding, without limitation, sales to creditors or in bulk or sales or other dispositions occurring under circumstances which would or could create any lien or interest adverse to the Lender's security interest or other right hereunder in the proceeds resulting therefrom.
>
> (Appellee's Brief, page 16, FN 4, emphasis in the original).

The operative words in Appellee's citation are: "adverse to the Lender's security interest **or other right hereunder in the proceeds resulting therefrom**." As an initial matter, the "or" is disjunctive which makes the clauses "security interest" and "other right hereunder in the proceeds resulting therefrom" mutually exclusive. The term "proceeds resulting therefrom" would be superfluous if it did not imply the security interest could shift thereto. And it defies sound reasoning that VNB would be entitled to a security interest in inventory as well as rights in the proceeds resulting therefrom.

Here, assuming *arguendo* that the inventory was the debtor's, which is not conceded, VNB's interest moved from the inventory to the proceeds upon the exchange. Correspondingly, there is no allegation or finding by the lower court that the pawn transactions created in interest adverse to VNB's rights to the proceeds received by the debtor in the pawn transactions (i.e. "the proceeds resulting therefrom.").

In addition, the beginning of Appellee's full text in its FN 4 reads as follows:

> The Lender hereby authorizes and permits the Borrower to hold, process, sell, use or consume in the manufacture or processing of finished goods, **or otherwise dispose of inventory for fair consideration**, all in the ordinary course of the **Borrower's** business. *Id.* (emphasis added).

There is no allegation or finding by the lower court that pawning the diamonds was not in the debtor's (i.e. "Borrower's") ordinary course of business, which is dispositive. Moreover, also dispositive, there is no finding by the lower court that the disposal was not for fair consideration.

Finally, Appellee's claim that Appellants did not contest the status of priority of VNB's claim (Appellee Brief, page 14) is without merit. That is what this whole case is about.

**D.    The evidence did not establish that AN FRIEDA was the rightful owner of the diamonds. Rather the evidence either was inconclusive or tended to demonstrate that the diamonds were owned by the debtor's principal, Ronen Konfino or his wife, personally, or were on "Memorandum" owned by third party consignors, and not subject to VNB's security interest.**

### 1.    <u>Non-Memorandum Diamonds</u>

Appellee argues that there was ample evidence to support the lower court's decision that the diamonds were owned by AN FRIEDA rather than the Konfinos personally. (Appellee's Brief, Section D1). Appellee extensively cites case law that difference should be given to the Bankruptcy Court's findings of credibility, unless clearly erroneous.

Appellant agrees with this latter statement and argues that the lower court's finding was clearly erroneous, because in coming to its conclusion that RR's testimony was not credible, the lower court seems to disregard much of the relevant evidence. Appellee does not tackle head-on any of Appellants' arguments in this regard, arguing merely that his 9 self-defined "findings" definitively show there was sufficient evidence. However, the lower court's conclusion is not based on Appellee's 9 "findings," but uon three lower court findings:

> [1] Given the admitted nature of AN Frieda's business, [2] the nature of the collateral, and [3] the inclusion of AN Frieda's names on the pawn tickets, the weight of the evidence shows that the items pawned in 41 of the 44 defaulted pawn transactions belonged to AN Frieda.

(Docket #160, p. 20).

Appellee does not address Appellants' argument that given the evidence in its totality, including the only testimony on ownership on record, which was from Roni Rubinov, which inexplicably, some of which was credited and some not, that viewed as a whole, the preponderance of the evidence standard was not met.

### 2. <u>Memorandum Diamonds</u>

Appellee argues that N.Y. Gen. Bus. Law § 44(3) is inapplicable here. (Appellee's Brief, Section D2). Where Appellee's logic initially breaks down is stating that VNB is a secured creditor, not a "consignment owner." (*Id.* at page 23). But Appellants argue that VNB, in claiming its secured creditor status, stepped into the shoes of the "legal owner," and thus its claim is governed by N.Y. Gen. Bus. Law § 44(3). If VNB wanted the collateral, it was going to have to "pay the amount of the loan and interest due." GBL § 44(3).

Appellee later argues that because VNB could "sell the collateral at a foreclosure and discharge its own claim and every subordinate claim including the pawn broker's lien" (Appellee's Brief, page 26), it would not be subject to a priority right of the pawn broker. But in making this argument, Appellee fails to grasp that by the time it acquired the collateral, it would have already redeemed it, thus extinguishing the pawn broker's claim not by priority but by full satisfaction.

Where the Appellee's logic further breaks down is in confusing the time frame of the pawn transactions with the time of the bankruptcy filing. For instance, Appellee argues that:

> The Bankruptcy Court rejected Appellants claim that it was "without notice" simply because it "closed its eyes" to the many **Court Orders** and the UCC filings. (Appellee's Brief, page. 24) (emphasis added).

Chronologically, the UCC filings came before the bankruptcy filing, and the Court Orders came after the bankruptcy filing. The term "without notice" or "without knowledge" is referenced from N.Y. Gen. Bus. Law § 44(3), which is applicable to the time of taking of the collateral, not to the later time of the bankruptcy filing. Thus, the reference to the "many Court Orders" are irrelevant to the analysis.

> In furtherance with his broken time-analysis, Appellee later writes that:
>> The equitable and policy arguments made by the Appellant are without merit. In dealing with the competing rights of pawnbroker creditors and consignors under General Business Law § 44(3), the legislature determined that possession should go to the innocent consignor owner, after the innocent pawn broker has been paid. Here, the pawnbroker is not "innocent" having had knowledge and notice of the Trustee and VNB and nonetheless acted to deprive such creditors of their rights.
>
> (*Id.* at 26).

Any mention of "notice of the Trustee" is likewise irrelevant to the analysis, as that came after the bankruptcy filing.

Moreover, Appellee's statement that "the legislature determined that possession should go to the innocent consignor owner, after the innocent pawn broker has been paid" is offered by Appellee as his own conclusion, as it comes with no reference to legislative history, case law, or statutory law providing that the pawnbroker has to be "innocent" or what even "innocent" means in this context. Appellee's self-constructed context is that Appellants were not "innocent" merely because they had constructive knowledge of VNB's prior UCC filing.

In contrast, Appellants provided legal context, which went undisputed by Appellee, from the United States Court of Appeals, Fourth Circuit in *Smith v Mixon*, 788 F2d 229, 232 [4th Cir 1986]. *Smith* stands for the proposition that constructive knowledge even if acknowledged is not sufficient to pierce the corporate veil and attach liability to the corporate officer, to wit: "the term 'knowledge' includes only actual notice". *Id.* Appellee does not dispute that Appellants had no **actual** knowledge of the VNB priority.

As well, whether Appellants relinquished the collateral or disposed of it pursuant to the exact letter of the statute in a reasonably commercial manner are all post-bankruptcy matters and not relevant to the point in time of the pawn transactions.

In sum, Appellee does not offer any meritorious argument in opposition to the proposition that N.Y. Gen. Bus. Law § 44(3), on its face, is intended to protect against a pawnbroker's loss of the collateral to even the legal owner without receiving repayment of the loan and principal. Even more so, public policy dictates that someone who seeks to exercise rights equivalent to the legal owner – tantamount to a constructive legal owner - should have no more rights than those of the legal owner. To provide a buffer against such potential scenarios, and to protect the pawnbroker, the legislature specifically foreclosed the application of other laws, to wit: "Notwithstanding any general, special or local law or ordinance to the contrary…" N.Y. Gen. Bus. Law § 44(3).

## II. <u>CONCLUSION</u>

For the reasons stated herein, the lower court clearly erred in various findings of fact and misapplied applicable statutory and case law. It is respectfully requested that the District Court overturn the lower court's decision holding NEW LIBERTY and Roni Rubinov jointly and severally liable and dismiss the action against NEW LIBERTY and Roni Rubinov in its entirety.