UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE A.N. FRIEDA DIAMONDS, INC.

RONI RUBINOV and NEW LIBERTY
PAWN SHOP, INC.,

                          Appellants,

            -against-

MATTHEW C. HARRISON, JR.,

                          Appellee.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  9/30/2021
```

1:20-cv-04008-MKV

OPINION AND ORDER AFFIRMING
JUDGMENT OF BANKRUPTCY COURT

MARY KAY VYSKOCIL, United States District Judge:

        This appeal arises from an adversary proceeding concerning alleged post-petition transfers

of property of the debtor in a bankruptcy case.  *In re A.N. Frieda Diamonds, Inc.*, 616 B.R. 295

(Bankr. S.D.N.Y. 2020).   In the adversary proceeding, Trustee-Plaintiff Matthew Harrison

("Trustee") asserted claims against Defendants Roni Rubinov ("R. Rubinov"), New Liberty Pawn

Shop Inc. ("New Liberty"), New York Estate Buyers, and Avner Rubinov ("A. Rubinov")

(collectively, "Defendants") to avoid certain transfers and to recover millions of dollars for the

allegedly improper post-petition transfer of merchandise owned by the Debtor, AN Frieda

Diamonds, Inc. ("AN Frieda").   *Harrison v. Konfino, et al.*, Adv. Proc. No 17-01103 (MEW)

(Bankr. S.D.N.Y. 2020).   Defendant-Intervenor Valley National Bank New York, LLC ("VNB"),

a secured creditor of AN Frieda, asserted crossclaims against Defendants for conversion and aiding

and abetting conversion, which were later assigned to the Trustee.

        After a bench trial, the bankruptcy court (Wiles, *J.*) issued a thorough decision and entered

final judgment on VNB's conversion claim in favor of the Trustee, and against R. Rubinov and

New Liberty, in the amount of $1,242,722.07.  *In re A.N. Frieda Diamonds, Inc.*, 616 B.R. at 322–

23.  R. Rubinov and New Liberty ("Appellants") appeal from that decision.  For the reasons discussed below, the judgment of the bankruptcy court is AFFIRMED in its entirety.

## BACKGROUND

### A.  Factual Background[1]

R. Rubinov is the owner of New Liberty, a pawnbroker that offers loans secured by delivery of merchandise as collateral.  (JPTO, Stip. Facts ¶ 8.)  Ronen Konfino, principal of Debtor AN Frieda, was a client of New Liberty since 2013.  (*Id.*)  A. Rubinov, R. Rubinov's father, is the owner of N.Y. Estate Buyers, an entity that frequently purchased the merchandise collateral from New Liberty upon a debtor's default on a loan.  (*Id.* ¶¶ 9–10.)

Between December 2013 and March 2015, Konfino delivered diamonds and other items to R. Rubinov and New Liberty in connection with 135 separate loan transactions.  (*Id.* ¶ 11.)  In May 2015, forty-four of those loans, worth a total value of over $1 million, either had fallen into default or were on the verge of falling into default within the next two months.  (*Id.* ¶ 13.)  New Liberty initiated foreclosure proceedings on July 9–10, 2015.  (*Id.*)  Because the defaults on outstanding loans to AN Frieda had not been cured, New Liberty sold the collateral to N.Y. Estate Buyers in five separate transactions beginning on August 10, 2015, though A. Rubinov denies that N.Y. Estate Buyers purchased the collateral.  (*Id.*)

In the interim, on July 16, 2015, creditors of AN Frieda had commenced an involuntary bankruptcy case against AN Frieda by filing a petition under Chapter 7 of the Bankruptcy Code. 11 U.S.C. § 303; (*Id.* ¶ 1.)  The bankruptcy court issued several orders barring parties from transferring property that belonged to AN Frieda.  Specifically, on August 5, 2015, the bankruptcy court ordered that all persons possessing property of the estate turn over such property to the

---

[1] The parties stipulated to the following facts before trial. (Joint Pretrial Order ("JPTO") [Bankr. ECF No. 145].)

Interim Trustee.  (*Id.* ¶ 2.)  On August 14, 2015, the bankruptcy court ordered AN Frieda to file a list of assets possessed by others and directed that those persons turn over such property.  (*Id.* ¶ 3.) On August 18, 2015, David Dinoso, the Interim Trustee's attorney, contacted Daniel Gotlin, counsel for R. Rubinov and New Liberty, and requested that the Interim Trustee be permitted access to take an inventory of the merchandise in New Liberty's vault.  (*Id.* ¶ 4.)  Gotlin advised Dinoso that New Liberty was reviewing its records and instructed the Interim Trustee not to appear to take an inventory.  (*Id.*)

On September 9, 2015, the bankruptcy court entered an order for relief under Chapter 7 of the Bankruptcy Code.  (*Id.* ¶ 1.)  On September 16, 2015, the bankruptcy court ordered R. Rubinov and New Liberty to turn over, within one day, any property of AN Frieda in their possession and provide an accounting to the Interim Trustee.  (*Id.* ¶ 5.)  The Interim Trustee filed an affidavit affirming that the bankruptcy court's order dated September 16, 2015, was served on R. Rubinov and New Liberty.  (*Id.*)  On December 2, 2015, the Trustee wrote to R. Rubinov and New Liberty regarding the bankruptcy court's orders.  (*Id.* ¶ 6.)  R. Rubinov maintains that he learned of the bankruptcy in December 2015.  (*Id.*)

**B. Adversary Proceeding Background**

On August 2, 2017, the Trustee commenced an adversary proceeding against Defendants to recover over $1 million for improper post-petition transfer of merchandise owned by AN Frieda and to avoid certain transfers.  (Compl. [Bankr. ECF No. 1]; JPTO, Nature Case ¶ 1.)  VNB moved to intervene to assert crossclaims against Defendants for conversion and aiding and abetting conversion.   (Mot. Intervene [Bankr. ECF No. 4]; Proposed Answer, Counterclaims, and Crossclaims [Bankr. ECF No. 4-3]; JPTO, Nature Case ¶ 2.)  The bankruptcy court granted intervention to VNB.  (Order Granting Intervention [Bankr. ECF No. 18].)

The bankruptcy court held a four-day bench trial in October 2019. After the trial, VNB assigned its rights and claims to the Trustee pursuant to a stipulation between the two parties. (So Ordered Stip. [Bankr. ECF No. 159].) On April 29, 2020, the bankruptcy court issued a decision making several factual findings and legal conclusions. *In re A.N. Frieda Diamonds, Inc.*, 616 B.R. 295 (Bankr. S.D.N.Y. 2020). First, the bankruptcy court found that the weight of the evidence showed that AN Frieda owned the items pawned in forty-one of the forty-four defaulted pawn transactions. *Id.* at 308. Second, VNB's prior perfected security interests in the items pawned took priority over any interests New Liberty acquired through the loan transactions. *Id.* Third, VNB's security interests extended to all property obtained by AN Frieda "on memorandum"—*i.e.*, on consignment—and New York General Business Law Section 44(3) did not protect New Liberty against claims by VNB. *Id.* at 310. Fourth, New Liberty disposed of AN Frieda's property in violation of New York law and the automatic stay. *Id.* at 312–15. Fifth, both New Liberty and R. Rubinov were liable for conversion on VNB's conversion claim. *Id.* at 317–18. Finally, Section 541(b)(8) of the Bankruptcy Code did not protect New Liberty from VNB's prior perfected security interest. *Id.* at 322. On April 30, 2020, the bankruptcy court entered judgment on VNB's conversion claim in favor of the Trustee and against Appellants in the amount of $1,242,722.07. (Judgment [Bankr. ECF No. 161].)

**C. The Appeal**

Appellants timely filed their Notice of Appeal in the bankruptcy court. (Notice Appeal [Bankr. ECF No. 162].) In the Designation of the Record, Appellants listed, *inter alia*, "Items entered into evidence at trial." (Designation Bankr. Record Appeal ¶ 2 [ECF No. 3].) Appellants explained that copies of these items are not available on the bankruptcy court docket but that current counsel had requested copies of them from outgoing trial counsel and would later file a supplement to the Designation of the Record. (*Id.*) Appellants later filed a Supplemental

Designation of the Record with several, but not all, trial exhibits.  (Suppl. Designation Record [ECF No. 7].)  After fully briefing the appeal, the parties filed a letter, pursuant to Federal Rule of Bankruptcy Procedure 8019, requesting that the Court decide the appeal on the papers and without oral argument "because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument." (Appellants' Letter Jan. 7, 2021 [ECF No. 21].)

The issues on appeal, as identified by Appellants, are as follows: (1) whether there was sufficient evidence to conclude that AN Frieda owned the items pawned in forty-one of the forty-four defaulted pawn transactions; (2) whether VNB's security interest in the pawned items takes priority over New Liberty's interest; (3) whether Section 541(b)(8) of the Bankruptcy Code protects New Liberty's interest in the pawned items against VNB's prior perfected security interest; (4) whether New York General Business Law Section 44(3) protects New Liberty against VNB's security interest; and (5) whether R. Rubinov may be held personally liable with respect to VNB's conversion claim.

## JURISDICTION AND STANDARD OF REVIEW

The bankruptcy court had jurisdiction over the adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(b).  *See* 28 U.S.C. §§ 157(a), 1334(b); Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York, No. M10-468, 12 Misc. 00032 (S.D.N.Y. Jan. 31, 2012) (Preska, C.J.).  The adversary proceeding was a "core" proceeding that could be heard by the bankruptcy court pursuant to 28 U.S.C. § 157(b)(2)(A), (E), and (O).  *See id.* § 157(b)(2)(A), (E), and (O) (providing that core proceedings include "matters concerning the administration of the estate," "orders to turn over property of the estate," and "other proceedings affecting the liquidation of the assets of the estate").  Even if the proceeding were not "core," the parties agreed that the bankruptcy court had

jurisdiction and did not object to the exercise thereof.  (Tr. Hearing Held Oct. 25, 2019 at 11 [Bankr. ECF No. 157].)  *See Cent. Vt. Pub. Serv. Corp. v. Herbert*, 341 F.3d 186, 190 (2d Cir. 2003) (noting that "bankruptcy jurisdiction can exist only if the proceeding was core or was consented to by the parties"); *In re Tyson*, 433 B.R. 68, 77 (S.D.N.Y. 2010) (collecting cases).

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a).  The Court reviews a bankruptcy court's conclusions of law *de novo* and findings of fact for clear error.  *In re Charter Commc'ns, Inc.*, 691 F.3d 476, 482–83 (2d Cir. 2012); *In re Queen Elizabeth Realty Corp.*, 586 B.R. 95, 104 (S.D.N.Y. 2018) (citing *In re Margulies*, 566 B.R. 318, 328 (S.D.N.Y. 2017)). "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." *In re Margulies*, 566 B.R. at 329 (alteration and internal quotation marks omitted) (first quoting *In re Artha Mgmt., Inc.*, 91 F.3d 326, 328 (2d Cir. 1996); then quoting *W. Milford Shopping Plaza v. The Great Atl. & Pac. Tea Co.* (*In re Great Atl. & Pac. Tea Co.*), No. 14 Civ. 4170 (NSR), 2015 WL 6395967, at *2 (S.D.N.Y. Oct. 21, 2015)).  A finding of fact "is 'clearly erroneous' when [the Court is] left with the definite and firm conviction that a mistake has been made." *In re Ames Dep't Stores, Inc.*, 582 F.3d 422, 426 (2d Cir. 2009) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).  "Although the bankruptcy court's findings of fact are not conclusive on appeal, the party that seeks to overturn them bears a heavy burden." *Hilton v. Wells Fargo Bank, N.A.*, 539 B.R. 10, 15 (N.D.N.Y. 2015) (citing *H & C Dev. Group, Inc. v. Miner* (*In re Miner*), 229 B.R. 561, 565 (B.A.P. 2d Cir. 1999)).  Findings of fact "must be upheld if 'plausible in light of the record viewed in its entirety.'" *Robbins Int'l, Inc. v. Robbins MBW Corp.* (*In re Robbins Int'l, Inc.*), 275 B.R. 456, 464–65 (S.D.N.Y. 2002) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573–74 (1985)).

**DISCUSSION**

As a preliminary matter, Appellants failed to comply with Federal Rule of Bankruptcy Procedure 8009 by not filing the remaining outstanding trial exhibits, which were designated as part of the record on appeal.  Fed. R. Bankr. P. 8009(a)(4).  This Rule "makes clear that a district court enjoys discretion to dismiss an appeal in all cases except where the debtor does not file a timely notice of appeal, in which case the court has no choice but to dismiss the case."  *In re Harris*, 464 F.3d 263, 270 (2d Cir. 2006).  While the record here is incomplete, the Court nonetheless is able to conduct a fully informed review of the decision below and "address the merits (or lack thereof) of [Appellants'] arguments based on the record as it currently stands."  *In re Emmons-Sheepshead Bay Dev. LLC*, 518 B.R. 212, 218 (E.D.N.Y. 2014).  As such, the Court fully resolves this appeal on the merits based on the record before it.  *See Kyle v. Dye* (*In re Kyle*), 317 B.R. 390, 393–94 (9th Cir. BAP 2004) (exercising discretion to resolve appeal on the merits despite "merely incomplete" record because the record was sufficient "to obtain a complete understanding of the issues so that [the court] could engage in informed review").

**A.   The Bankruptcy Court Did Not Clearly Err in Finding That AN Frieda Owned Forty-One of the Forty-Four Pawned Items at the Time of the Pawn Transactions**

The bankruptcy court's determination that AN Frieda owned the items pawned in forty-one of the forty-four defaulted pawn transactions was not clearly erroneous.  The record reflects that there was sufficient evidence to support this conclusion.  Over the course of four days, the Court heard testimony from ten witnesses and 60 exhibits (which included excerpts from deposition testimony) were admitted into evidence.  *In re A.N. Frieda Diamonds, Inc.*, 616 B.R. at 304–06.  Forty-two of the forty-four relevant pawn transactions were memorialized on pawn tickets that named both AN Frieda and Konfino.  *Id.* at 305; (*see* Suppl. Designation Record Ex. PX16 [ECF No. 7-16].)  The bankruptcy court found credible the Trustee's testimony that he had

limited information on AN Frieda's assets due to a damaged computer hard drive. *In re A.N. Frieda Diamonds, Inc.*, 616 B.R. at 306. Yet diamond merchants testified, and exhibits demonstrated, that five of the pawned items belonged to AN Frieda. *Id.*; (Suppl. Designation Record Ex. PX16.) Furthermore, the bankruptcy court found not credible and self-serving R. Rubinov's testimony concerning the ownership of certain pawned items. *In re A.N. Frieda Diamonds, Inc.*, 616 B.R. at 306.

Based on the evidence presented at trial, the bankruptcy court concluded that "it is more likely than not that the property involved in three of the 44 relevant transactions belonged to Mr. Konfino [owner of AN Frieda] and his wife personally,[2] but that it is far more likely than not that the other 41 transactions all involved property that belonged to AN Frieda." *Id.* at 307. The bankruptcy court gave several reasons for this finding: the forty-one pawn transactions involved diamonds; AN Frieda was in the business of buying and selling diamonds; to the extent Konfino and his wife bought and sold diamonds, they did so through AN Frieda; and R. Rubinov claimed that he believed at least some of the items belonged to AN Frieda. *Id.* at 307–08. The bankruptcy court also considered R. Rubinov's failure to make clear on the pawn tickets whether Konfino was acting on his own behalf or as an agent for AN Frieda, despite having a statutory obligation to do so. *Id.* at 308; *see id.* at 305 (quoting N.Y. Gen. Bus. Law § 43). The bankruptcy court concluded that "the real reason why AN Frieda was listed on 42 of the 44 defaulted pawn tickets was that Roni Rubinov understood and believed that Mr. Konfino was acting on behalf of AN Frieda in those transactions." *Id.* at 308. There was no clear error in these findings.

---

[2] The bankruptcy court concluded that Konfino owned one of these items, a watch (ticket 3434), given that AN Frieda did not primarily sell watches and that R. Rubinov testified that he observed Konfino wearing the watch on several occasions. *In re A.N. Frieda Diamonds, Inc.*, 616 B.R. at 307.

Appellants argue that the bankruptcy court failed to consider relevant evidence. (Appellants' Br. 23–25 [ECF No. 11].)  They first point to the fact that Konfino's name also appeared on the pawn tickets, but the bankruptcy court specifically acknowledged this fact, *In re A.N. Frieda Diamonds, Inc.*, 616 B.R. at 305, and as discussed above, went on to thoroughly explain why it nevertheless concluded that the items were owned by AN Frieda. *In re A.N. Frieda Diamonds, Inc.*, 616 B.R. at 305–08.  Appellants also point to R. Rubinov's testimony that Konfino had stated that the pawned items were his.  (Appellant's Br. 23–24.)  But the bankruptcy court considered the testimony and found it not credible because it conflicted with other testimony R. Rubinov gave. *See In re A.N. Frieda Diamonds, Inc.*, 616 B.R. 295, 306–07.  Credibility calls by the bankruptcy court should not be disturbed on appeal, as that court "had the opportunity to observe firsthand the demeanor, body language, tone, and reactions of the live witnesses, whereas this Court has only the benefit of a written transcript and the written filings that were present before the [bankruptcy] court." *Bordonaro v. Fido's Fences, Inc.*, 565 B.R. 222, 236–37 (E.D.N.Y. 2017) (internal quotation marks omitted) (deferring to credibility determinations of bankruptcy court (collecting cases)); *see Brody v. Brody* (*In re Brody*), 3 F.3d 35, 39 (2d Cir. 1993) (affirming district court's holding deferring to credibility determinations of bankruptcy court); *In re Williams*, 579 B.R. 314, 327 (S.D.N.Y. 2016) (noting that "particularly strong deference must be given a bankruptcy court's finding based on credibility assessments of witnesses it has heard testify" (quoting *In re Pisculli*, 426 B.R. 52, 29 (E.D.N.Y. 2010))); *Cadle Co. v. DiFabio* (*In re DiFabio*), 363 B.R. 343, 344 (D. Conn. 2007) (finding it "inappropriate" for "the court [to] substitute its evaluation of the evidence, including an assessment of the credibility of the witnesses who testified in the bankruptcy court proceeding, for that of the bankruptcy court"); *see also Ceraso v. Motiva Enterprises, LLC*, 326 F.3d 303, 316 (2d Cir. 2003) (noting that appellate courts "are not allowed

to second-guess either the trial court's credibility assessments or its choice between permissible competing inferences" (citing *Anderson*, 470 U.S. at 573–74)).

The other evidence Appellants seek to highlight—specifically, that "Konfino was extremely wealthy" and "clearly a conman out to con everyone around him" and that he and his wife fled the country and defaulted in the bankruptcy proceeding (Appellants' Br. 25)—casts little to no doubt on the bankruptcy court's factual finding, much less shows that it is clearly erroneous. *See Collins v. Hi-Qual Roofing & Siding Materials, Inc.*, Nos. 02–CV–0921E(F), 02–CV–0922E(F), 2003 WL 23350125, at *4 (W.D.N.Y. 2003) (dismissing arguments that the bankruptcy court "omit[ed] relevant and material surrounding circumstances" because "such arguments d[id] little to overcome the evidence in the record that support[ed] the Bankruptcy Court's conclusion"). Accordingly, the bankruptcy court's factual finding with respect to ownership of the items pawned in the defaulted pawn transactions was not clearly erroneous.

### B. VNB's Security Interest Takes Priority Over New Liberty's Interest in the Pawned Items

The bankruptcy court correctly determined that VNB's security interest in the pawned items takes priority over New Liberty's interest.  The bankruptcy court relied on uncontested evidence offered at trial by VNB, including a security agreement and UCC filing, which the bankruptcy court found to be "credible and convincing."  *In re A.N. Frieda Diamonds, Inc.*, 616 B.R. at 308; (*see* Suppl. Designation Record Ex. PX18.)  Relying on this evidence, the bankruptcy court concluded that "VNB's security interests were valid and were perfected prior to the date of any of the 41 pawn transactions that involved property delivered on behalf of AN Frieda" and therefore "VNB's prior perfected claims had priority over any secured rights that New Liberty might have claimed based on the pawn transactions."  *In re A.N. Frieda Diamonds, Inc.*, 616 B.R. at 308.

Appellants argue on appeal that VNB's UCC filing did not establish a priority claim over the items pawned to New Liberty because, pursuant to the Joint Pretrial Order, the security agreement provided that transfers in ordinary course of business would be "free and clear" of VNB's liens.  (Appellants' Br. 21 (quoting JPTO, Contentions IV.A. ¶ 12).)  Appellants claim that because the bankruptcy court made no findings that the transactions were not in the ordinary course of business, New Liberty's interest was free and clear of VNB's security interest and therefore VNB's security interest cannot have priority over VNB's security interest.  (*Id.* at 21–22.)  Appellee responds that, as a matter of law, the pawn transactions were not in the ordinary course of business.  (Appellee's Br. 16 [ECF No. 15].)

Although the security agreement was admitted into evidence at trial and was designated as part of the record on appeal (Designation Bankr. Record Appeal 2 [ECF No. 3]), Appellants never filed it (and other trial exhibits) with this Court.  The Court could dismiss this portion of the appeal for this reason alone.  *See In re Emmons-Sheepshead Bay Dev.*, 518 B.R. at 217–18 (collecting cases).  In any event, Appellants' argument fails on the merits as a matter of law.

Under the New York UCC, "a buyer in ordinary course . . . takes free of a security interest created by the buyer's seller, even if the security interest is perfected and the buyer knows of its existence."  N.Y.U.C.C. § 9-320(a).  But "'[b]uyer in ordinary course of business' does not include a person that acquires goods in transfer in bulk *or as security for or in partial satisfaction of a money debt.*"  N.Y.U.C.C. § 1-201(b)(9) (emphasis added).  Accordingly, the law is clear that a "buyer in ordinary course" "does *not* include a pawnbroker."  *Tanbro Fabrics Corp. v. Deering Milliken, Inc.*, 39 N.Y.2d 632, 636, 350 N.E.2d 590, 385 N.Y.S.2d 260 (1976); *see Bank of Utica v. Castle Ford, Inc.*, 36 A.D.2d 6, 9, 317 N.Y.S.2d 542 (4th Dep't 1971) (noting that the nature of a buyer's business is generally immaterial in determining whether a buyer is a buyer in ordinary course of business and takes free of a security interest, unless the buyer is a pawnbroker); *Sindone*

*v. Farber*, 105 Misc.2d 634, 638, 432 N.Y.S.2d 778 (Sup. Ct. Nassau Cty. 1980) (same (citing *Bank of Utica*, 36 A.D.2d at 9)); *see also* 1 Eldon H. Reiley, Security Interests in Personal Property § 6:3, Westlaw (database updated Dec. 2020) (noting that "if the buyer is a pawnbroker it cannot be a [buyer in ordinary course] . . . because persons selling to pawnbrokers are not selling in the ordinary course of their business").[3]

Here, as a matter of law, New Liberty is not a buyer in ordinary course with respect to AN Frieda's merchandise because New Liberty is a pawnbroker and the items were pawned, not sold. *See Tanbro Fabrics Co.*, 39 N.Y.2d at 636; *see Mellen, Inc. v. Biltmore Loan & Jewelry-Scottsdale, LLC*, 247 F. Supp. 3d 1084, 1094 (D. Az. 2017) (holding that a pawnbroker who loaned money to jeweler and received jewelry as collateral was not a buyer in ordinary course); *Yampol v. Moss*, 19 UCC Rep. Serv. 1334, 1976 WL 16070 (N.Y. 1st Dep't 1976) (same).   It was uncontested that the pawned items were acquired as security for the loans New Liberty extended to AN Frieda.   *In re A.N. Frieda Diamonds, Inc.*, 616 B.R. at 299; *In re A.N. Frieda Diamonds, Inc.*, 616 B.R. at 302 ("New Liberty's pawn tickets make clear that each of the transactions relevant to this adversary proceeding involved a loan of money based on a deposit and pledge of tangible personal property."); (JPTO, Stip. Facts ¶¶ 8–17.); *See* N.Y.U.C.C. § 1-201(9); Richard C. Tinney, Who Is "Buyer in Ordinary Course of Business" Under Uniform Commercial Code, 87 A.L.R. 3d 11 § 8 n.60, Westlaw (noting that "a pawnbroker who takes goods as a pledge would not be considered a buyer in ordinary course of business because he takes the goods as security for a money debt").   While Appellants claim the bankruptcy court failed to make explicit findings in this regard, the law is clear that this Court "may affirm [a trial court's decision] on any grounds

---

[3] New York Uniform Commercial Code Section 1-201was amended in 1999, but the definition of "buyer in ordinary course of business" has not changed. *See* N.Y. U.C.C. § 1-201 cmt. 9 (noting that the amended statute is "identical to former Section 1-201" "[e]xcept for minor stylistic changes").

for which there is a record sufficient to permit conclusions of law, including grounds not relied upon by the [trial] court." *CBF Indústria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 78 (2d Cir. 2017) (quoting *In re Arab Bank, PLC Alien Tort Statute Litig.*, 808 F.3d 144, 157–58 (2d Cir. 2015)).

Appellants argue that N.Y.U.C.C. § 1-201(b)(9) is inapplicable. Specifically, Appellants argue that the loan cannot be a "money debt" under the statute since there is no legal obligation to redeem the pawned item or repay the loan. (Appellants' Reply Br. 4 [ECF No. 19].) This argument is without merit. A pawn transaction is a nonrecourse loan, *TitleMax v. Northington* (*In re Northington*), 876 F.3d 1302, 1306 (11th Cir. 2017), which means that the pawnbroker (*i.e.*, creditor) "look[s] only to the [d]ebtor's collateral for payment," *Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 438 n.3 (1999); *see* 7 Collier on Bankruptcy ¶ 1111.03. The pawnbroker acquires a lien on the property for the amount of the loan plus interest. 10 N.Y. Jur. 2d Banks and Financial Institutions § 961.

"Despite its nonrecourse nature, the pawn transaction establishes a debtor/creditor relationship between the borrower and pawnbroker." *In re Womack*, 616 B.R. 420, 424 (Bankr. M.D. Ala. 2020) (citing *In re Young*, 281 B.R. 74, 78–79 (Bankr. S.D. Ala. 2001)). The borrower creates a loan, or money debt, that he promises to pay or risks forfeiting the pledged collateral. *See Mellen*, 247 F. Supp. 3d at 1094. Appellants offer no compelling reason for the Court to conclude that a pawn transaction does not qualify as a money debt under the UCC. Accordingly, the bankruptcy court correctly held that New Liberty did not take the pawned items "free and clear" of VNB's security interest and VNB's perfected security interest takes priority over New Liberty's interest.

**C. Section 541(b)(8) of the Bankruptcy Code Does Not Protect New Liberty's Interest in the Pawned Items Against VNB's Senior Perfected Security Interest**

New Liberty argues that Section 541(b)(8) of the Bankruptcy Code protects its interest in the pawned items against VNB's security interest. (Appellants' Br. 17–21.) New Liberty argues that the pawned items were not property of AN Frieda's estate and therefore cannot be subject to the senior secured claim of VNB. (*Id.* at 19–20.)

Section 541(b)(8) provides:

> (b) Property of the estate does not include—
>
> > (8) subject to subchapter III of chapter 5, any interest of the debtor in property where the debtor pledged or sold tangible personal property (other than securities or written or printed evidences of indebtedness or title) as collateral for a loan or advance of money given by a person licensed under law to make such loans or advances, where—
> >
> > > (A) the tangible personal property is in the possession of the pledgee or transferee;
> > >
> > > (B) the debtor has no obligation to repay the money, redeem the collateral, or buy back the property at a stipulated price; and
> > >
> > > (C) neither the debtor nor the trustee have exercised any right to redeem provided under the contract or State law, in a timely manner as provided under State law and section 108(b).

11 U.S.C. § 541(b)(8). It is widely accepted that this statute "declare[s] that certain tangible personal property pledged to pawnbrokers is excluded from property of the estate." 5 Collier on Bankruptcy ¶ 541.24, Lexis (database updated 2021); *see also In re Boudouvas*, No. 08–71973–478, Adv. Pro. No. 08–8149–478, 2009 WL 693624, at *4 (Bankr. E.D.N.Y. Mar. 5, 2009) ("11 U.S.C. § 541(b)(8) declares that certain tangible personal properly pledged to collateral loan brokers or pawn brokers is excluded from properly [sic] of the estate."). *See generally* 1 Joan N. Feeney et al., Bankruptcy Law Manual § 5:28, Westlaw (database updated June 2021).

The bankruptcy court held that each prong of Section 541(b)(8) was satisfied and therefore any pawned items belonging to AN Frieda were not property of the estate.  *In re A.N. Frieda Diamonds, Inc.*, 616 B.R. at 303–04.  The bankruptcy court further held that "the Trustee's claims under section 549 and 550 do not permit the Trustee to ignore the amounts owed to New Liberty or the redemption conditions that are imposed by section 541(a)(8) [sic]."  *Id.* at 322.  The bankruptcy court explained that undoing and avoiding transfers pursuant to Sections 549 and 550 "would merely reinstate (not eliminate) the Trustee's redemption obligations and the protections to which New Liberty was entitled under section 541(a)(8) [sic]."  *Id.*  The bankruptcy court reasoned that:

> if New Liberty had simply held the diamonds and other property and had never transferred them, then under section 541(a)(8) [sic] of the Bankruptcy Code those items would not even have been considered property of the estate unless the Trustee first paid the redemption prices.  I do not believe it is a sound interpretation of the relevant sections of the Bankruptcy Code to say that the pawned items were subject to a redemption obligation – and would not even have constituted property of the estate unless the Trustee paid what was owed to New Liberty – but that the "transfer" of such property somehow frees the Trustee from that redemption condition, and somehow allows the Trustee to bring the property (or its value) into the estate while at the same time dishonoring the obligations owed to the pawnbroker.

*Id.*  Appellants agree with this conclusion.  (Appellants' Br. 19.)

Yet Appellants argue at the same time that the pawned items should not be subject to VNB's senior security interest—specifically, Appellants urge that because AN Frieda did not exercise its redemption rights, Appellants had the right to automatic forfeiture of the pawned items and to extinguish not only AN Frieda's ownership rights but also the rights of VNB as a senior secured creditor.  (*See* Appellants' Br. 19–20.)  Appellants argue that "NEW LIBERTY either gets to keep the unredeemed pledges or is paid the proper redemption price and turns over the pledges in exchange."  (Appellants' Reply Br. 3.)

Even if this argument were correct, because Appellants disposed of the pawned items prior to the expiration of AN Frieda's redemption rights, any sales that occurred were in violation of New York law and the automatic stay under the Bankruptcy Code.  Under New York law, AN Frieda had the right to redeem pledged items within thirty days upon receiving notices from New Liberty of its intent to sell the items.  N.Y. Gen. Bus. Law § 49(1).  Section 541(b)(8) of the Bankruptcy Code recognizes that the redemption period is subject to extension pursuant to Section 108(b).  11 U.S.C. § 541(b)(8)(C).  Section 108(b) of the Bankruptcy Code provides that "if applicable nonbankruptcy law . . . fixes a period within which the debtor" may "cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition," then the deadline is automatically extended to "60 days after the order for relief."  11 U.S.C. § 108(b)(2).

New Liberty initiated the foreclosure process by sending default notices on July 9 and 10, 2015.  The bankruptcy petition was filed on July 16, 2015.  The Order of Relief was entered on September 8, 2015, so the expiration of the redemption period was automatically extended to November 7, 2015.  Appellants contended below that the pawned items were sold to N.Y. Estate Buyers in August and September 2015.  (JPTO, Stip. Facts ¶¶ 15–16.)  These sales—if they occurred, as the bankruptcy court found that they did not, *In re A.N. Frieda Diamonds, Inc.*, 616 B.R. at 312–13—would have been before the redemption periods expired and while the items were still property of the estate.  As such, the sales would have been in violation of the automatic stay and therefore void, regardless of whether New Liberty was aware of the bankruptcy case.  *See Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199, 207 (2d Cir. 2014) (noting that "actions taken in violation of the stay are void and without effect" (quoting *Fed. Deposit Ins. Corp. v. Hirsch* (*In re Colonial Realty Co.*), 980 F.2d 125, 137 (2d Cir. 1992))); *In re Heating Oil Partners*, No. 3:08–CV–1976 (CSH), 2009 WL 5110838, at *8 (D. Conn. Dec. 17, 2009) (noting that the automatic

stay "becomes operative even if the creditor had no knowledge or notice of the filing of the bankruptcy petition or the entry of the automatic stay" (collecting cases)).  Because they would have been void, the alleged sales would not have extinguished the rights of VNB as a senior secured creditor.

Furthermore, even if New Liberty had the right to complete a foreclosure, the sales would have been defective under New York law.  New York Uniform Commercial Code Section 9-610 sets forth procedures for disposition of collateral by a secured party after default.  N.Y. U.C.C. § 9-610.  Section 9-611 requires the secured party to send a notice of the disposition to any secured creditor that holds a lien on the collateral perfected by the filing of a proper financing statement. *Id.* § 9-611(c)(3)(B).  It is undisputed that VNB was a senior secured creditor that held a lien on the pawned items perfected by a proper financing statement.  *In re A.N. Frieda Diamonds, Inc.*, 616 B.R. at 313; (*see* Suppl. Designation Record Ex. PX18; Tr. Hearing Held Oct. 28, 2019 at 158 [Bankr. ECF No. 154].)  New Liberty therefore was legally required to notify VNB of the default so it could assert its rights to take possession and control the disposition of the collateral.  It is undisputed that New Liberty did not provide such notice.  The bankruptcy court correctly found that New Liberty's failure to provide notice, coupled with its "deliberate dispositions of the collateral, . . . constituted a conversion of the property for which VNB is entitled to recover."  *In re A.N. Frieda Diamonds, Inc.*, 616 B.R. at 317–18; *See TMMB Funding Corp. v. Associated Food Stores, Inc.*, 136 A.D.2d 540, 523 N.Y.S.2d 161 (2d Dept. 1988) (affirming summary judgment on conversion claim where creditor sold collateral without providing notice to another secured creditor); *see also Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403–04 (2d Cir. 2012) (noting that conversion under New York law is "the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights" (quoting

*Vigilant Ins. Co. of Am. v. Hous. Auth.*, 87 N.Y.2d 36, 44, 660 N.E.2d 1121, 637 N.Y.S.2d 342 (1995))).

In short, Appellants' arguments regarding Section 541(b)(8) are without merit.  Section 541(b)(8) does not protect New Liberty's interest in the pawned collateral from VNB's senior perfected security interest.

### D.  New York General Business Law Section 44(3) Does Not Protect New Liberty Against Claims by VNB

VNB holds a senior security interest in items obtained by AN Frieda "on memorandum" (*i.e.*, consignment) notwithstanding New York General Business Law Section 44(3).  That statute provides:

> Notwithstanding any general, special or local law or ordinance to the contrary, if a collateral loan broker in good faith and without knowledge extends credit on a loan, the collateral for which was entrusted to the pledgor on consignment or was entrusted by a merchant dealing in goods of the kind pledged to the pledgor who was a merchant dealing in goods of the kind pledged, the collateral loan broker shall be required to relinquish the collateral *to the legal owner* provided the amount of the loan and interest due is paid.

N.Y. Gen. Bus. Law § 44(3) (emphasis added).  Caselaw interpreting this statute is scarce.  *See Gerald Modell Inc. v. Morgenthau*, 196 Misc.2d 354, 359, 764 N.Y.S.2d 779 (Sup. Ct. N.Y. Cnty. 2003) ("Research has found no cases interpreting GBL § 44(3).").[4]

"As in any statutory construction case, we start, of course, with the statutory text, and proceed from the understanding that unless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning."  *Sebelius v. Cloer*, 569 U.S. 369, 376

---

[4] In *Morgenthau*, pawnbrokers sued under New York Civil Practice Law and Rules Article 78 to have outstanding loan balances on pawned items, which the pledgor obtained on memorandum and had been seized by the police pursuant to search warrants in a pending criminal matter, satisfied before the district attorney and New York Police Department released the items to the owners. 196 Misc.2d at 355, 358–59. The *Morgenthau* court interpreted the statute to require the pawnbrokers to demonstrate that either the individual who pawned the items "was a jewelry merchant or that the subject items were consigned to [him]." *Id.* at 360.

(2013) (alterations and internal quotation marks omitted) (quoting *BP Am. Prod. Co. v. Burton*, 549 U.S. 84, 91 (2006)).  The operative language of Section 44(3) reflects that the statute applies to certain disputes involving the relinquishment of pawned property to the "legal owner."  For example, it could apply to claims by the owner of pawned property against a pawnbroker or to claims by a pawnbroker to prevent return of property to the owner before the loan is satisfied.  *See generally Morgenthau*, 196 Misc.2d 354.

Section 44(3) has nothing to do with a claim against a pawnbroker *by a creditor* with a senior secured interest in the pawned items.  As such, it does not protect New Liberty against claims by VNB because VNB is a secured creditor and not an owner of the collateral.  *See* 8A Anderson, U.C.C. § 9-102:62, Westlaw (database updated Dec. 2020) ("A person cannot claim to be both a secured creditor with respect to property and its owner, as such claims are incompatible."); *id.* § 9-102:105 (noting that "in the ordinary Article 9 secured transaction, the secured creditor is not the owner of the collateral"); *see also Pine Bush Equip. Co., Inc. v. Florian* (*In re Florian*), 233 B.R. 25, 27 (Bankr. D. Conn. 1999) (noting that "plaintiff is not a secured creditor but the owner"); *accord Isaacs v. Tifiletti*, 237 A.D.2d 976, 976, 654 N.Y.S.2d 903 (4th Dep't 1997) (finding that individual who "had only a security interest in [a] vehicle . . . cannot be held liable as an owner of that vehicle").  VNB offered evidence at trial as to the existence and perfection of its security interests, which extended to all of AN Frieda's rights and interests in personal property, including its entire inventory.  *In re A.N. Frieda Diamonds, Inc.*, 616 B.R. at 308; (*see* Suppl. Designation Record Ex. PX16.)  Because VNB is a secured creditor and not the "legal owner" of the pawned memorandum items, Section 44(3) does not apply and therefore does not protect New Liberty from VNB's security interests.[5]

---

[5] The bankruptcy court found that Section 44(3) does not apply here for the same reason—*i.e.*, VNB is a secured creditor, not an owner of the pawned memorandum items.  *In re A.N. Frieda Diamonds, Inc.*, 616 B.R. at 310.  The

**E. R. Rubinov May Be Held Individually Liable Because He Personally Participated in the Conversion of the Pawned Items**

The bankruptcy court did not err in holding R. Rubinov, owner of New Liberty, personally liable with respect to VNB's conversion claim.  "Under New York law, 'a corporate officer who commits or participates in a tort, even if it is in the course of his duties on behalf of the corporation, may be held individually liable.'"  *Bano v. Union Carbide Corp.*, 273 F.3d 120, 133 (2d Cir. 2001) (quoting *Lopresti v. Terwilliger*, 126 F.3d 34, 42 (2d Cir. 1997)); *see Greenway Plaza Office Park-1, LLC v. Metro Const. Servs., Inc.*, 4 A.D.3d 328, 329–30, 771 N.Y.S.2d 532 (2d Dep't 2004) (noting that "if a director or officer commits, or participates in the commission of, a tort, whether or not it is also by or for the corporation, he is liable to third persons injured thereby" (collecting sources)); *see also* Jack C. Auspitz et. al*.,* 4A N.Y. Pac., Com. Litig. In New York State Courts, § 116:38 (R. Haig ed., Thomas Reuters, 4th ed. Jan. 2015) ("A director or officer of a corporation who participates in the commission of a tort by the corporation may be held personally liable for injuries caused thereby.").  In particular, "[a] corporate officer is individually liable for fraudulent acts or false representations of his own, or in which he participates, even though his actions in such respect may be in furtherance of the corporate business."  *White v. Nat'l Home Protection, Inc.*, No. 09 Civ. 4070(SHS), 2010 WL 1706195, at *5 (S.D.N.Y. Apr. 21, 2010) (alteration in original) (quoting *Tomoka Re Holdings, Inc. v. Loughlin*, No. 03 Civ. 4904, 2004 WL 1118178, at *7 (S.D.N.Y. May 19, 2004)).

---

bankruptcy court went on to find that New Liberty did not satisfy the "without knowledge" element of Section 44(3), reasoning that "New Liberty at all times had constructive knowledge of VNB's security interests, because those interests were set forth in a valid UCC financing statement."  *Id.*  But in statutory texts, "notice" can differ from "knowledge." *See, e.g.*, 1A Anderson, U.C.C. § 1-201:286 ("When the UCC requires knowledge, the requirement is not satisfied by proving the existence of notice.  That is, knowledge means actual knowledge, and is not notice or constructive knowledge."). Having concluded that VNB is not an "owner," and thus not within the scope of Section 44(3), the Court need not address whether New Liberty had "knowledge" as that term is used in Section 44(3).

Here, the bankruptcy court found that R. Rubinov personally fabricated the purported sales of the pawned items to N.Y. Estate Buyers to conceal what actually had happened to the collateral. *In re A.N. Frieda Diamonds, Inc.*, 616 B.R. at 312–13; *see also id.* at 318 (finding that R. Rubinov "controlled the collateral and actively misrepresented what happened to it").  Given this factual finding, among others, R. Rubinov may be held individually liable because he personally participated in the conversion of the pawned items.  *See Bano*, 273 F.3d at 133 (quoting *Lopresti*, 126 F.3d at 42); *Sun Prods. Corp. v. Bruch*, No. 10 Civ. 4816(SAS), 2011 WL 5120307, at *5 (S.D.N.Y. Oct. 28, 2011) (holding president and sole shareholder of corporation personally liable because, while acting on behalf of the corporation, he "took personal actions to perpetrate the fraud"); *cf. White*, 2010 WL 1706195, at *5 (dismissing complaint with respect to three principals of the defendant corporation because the complaint did not allege that they "personally made or participated in any of the allegedly fraudulent or negligent misrepresentations").

In arguing that R. Rubinov should not be held personally liable, Appellants rely on *Cortlandt Street Recovery Corp. v. Bonderman*, 31 N.Y.3d 30, 96 N.E.3d, 73 N.Y.S.3d 95 (2018) (Appellants' Br. 9–17).  However, *Cortlandt* is not relevant here.  *Cortlandt* involved an action to pierce the corporate veil under an alter ego theory and hold personally liable individual partners of private equity investment funds who created a corporate structure to incur corporate debt and distributed the loan proceeds to themselves through fraudulent transfers.  31 N.Y.3d at 33–34.  The doctrine of piercing the corporate veil is employed "to impose the corporate obligation on its owners."  *Id.* at 47 (explaining that a party employing the doctrine "seek[s] to go behind the corporate existence in order to circumvent the limited liability of the owners and to hold them liable for some underlying corporate obligation" (quoting *Morris v. N.Y. State Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 141, 623 N.E.2d 1157, 603 N.Y.S.2d 807 (1993)); *see Okapi Partners, LLC v. Holtmeier*, No. 18-cv-6381 (PKC), 2019 WL 1517553, at *4 (S.D.N.Y. Apr. 8, 2019).

Holding corporate owners personally liable under the doctrine of piercing the corporate veil is different than holding corporate officers and directors liable for torts that they committed or in which they participated. *See Tomoka Re Holdings, Inc.*, 2004 WL 1118178, at *7 (noting that "the 'corporate veil' protects *shareholders* from liability for corporate transgressions, but does not shield corporate *employees* from their *own* wrongdoing" (quoting *Morin v. Trupin*, 747 F. Supp. 1051, 1067–68 (S.D.N.Y. 1990))).  Indeed, it is well established under New York law that corporate officers and directors can be held individually liable for their own torts regardless of whether the corporate veil is pierced. *See Bruch*, 2011 WL 5120307, at *5 (explaining that "[w]here a plaintiff asserts tort claims such as for fraud or fraudulent misrepresentation, there is *no need to pierce the corporate veil* in order to hold corporate officers or employees individually liable for their own acts of fraud" (quoting *White*, 2010 WL 1706195, at *5)); *DER Travel Servs., Inc. v. Dream Tour & Adventures, Inc.*, No. 99 CIV. 2231(HBP), 2001 WL 1160598, at *4 (S.D.N.Y. Sept. 27, 2001) (finding that "[i]f [defendant] committed the torts and thereby caused injury, he is personally liable to plaintiff . . . regardless of whether [the] corporate veil should be pierced"); *H. M. Kolbe Co. v. Shaff*, 240 F. Supp. 588, 589–90 (S.D.N.Y. 1965) (noting that officers or directors may be individually liable for personal participation in torts and it is therefore "not necessary to pierce the corporate veil" (collecting cases)); *Peguero v. 601 Realty Corp.*, 58 A.D.3d 556, 558–59, 873 N.Y.S.2d 17 (1st Dep't 2009) (noting that "a corporate officer who participates in the commission of a tort may be held individually liable, . . . regardless of whether the corporate veil is pierced" (quoting *Espinosa v. Rand*, 24 A.D.3d 102, 102, 806 N.Y.S.2d 186 (1st Dep't 2005); and citing *W. Joseph McPhillips, Inc. v. Ellis*, 278 A.D.2d 682, 717 N.Y.S.2d 743 (3d Dep't 2000))).

Appellants also argue that the three cases on which the bankruptcy court relied to impose personal liability on R. Rubinov are "out of date" and "clearly abrogated by *Cortland*."

(Appellants' Br. 13.)[6]   Appellants are wrong.   As explained above, the veil-piercing standard

articulated in *Cortlandt* is not even at issue where a claimant seeks to hold a corporate officer liable

for torts the officer personally committed.   It has long been the law—and it remains the law after

*Cortlandt*—that corporate owners and officers may be held personally liable for torts they commit,

without regard to whether the corporate veil can be pierced.   *See Am. Lecithin Co. v. Rebmann*,

No. 12-CV-929 (VSB), 2020 WL 4260989, at *6 (S.D.N.Y. July 24, 2020) ("[A] shareholder is

individually liable for torts of the corporation in which he personally participates." (collecting

cases)); *Ithaca Capital Invs. | S.A. v. Trump Panama Hotel Mgmt. LLC*, 450 F. Supp. 3d 358, 374

(S.D.N.Y. 2020) ("[U]nder New York Law, piercing the corporate veil is not required to hold a

corporate officer liable for his company's torts: 'a corporate officer who controls corporate conduct

and thus is an active individual participant in that conduct is liable for the torts of the corporation.'"

(quoting *City of Newburgh v. Sarna*, 690 F. Supp. 2d 136, 163 (S.D.N.Y. 2010))); *Doe v.

Bloomberg, L.P.*, 178 A.D.3d 44, 50, 109 N.Y.S.3d 254 (1st Dep't 2019) (second alteration in

original) ("[A] corporate owner or officer may be held individually liable for a tort committed by

the corporation but only if the corporate officer or owner 'participates in the commission of [the]

tort.'" (quoting *Am. Express Travel Related Servs. Co. v. N. Atl. Res, Inc.,* 261 A.D.2d 310, 311,

691 N.Y.S.2d 403 (1st Dep't 1999))); *see also Lopresti*, 126 F.3d at 42 (holding that one of the

---

[6] Those cases, as cited by the bankruptcy court, are:

> *Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685, 701 (S.D.N.Y. 2015) (denying motion
> to dismiss claims against individual defendants where the complaint "[s]ufficiently pleaded
> the individual Defendants' personal participation in deceptive business practices prohibited
> by the General Business Law"); *Nat'l Survival Game, Inc. v. Skirmish, U.S.A., Inc.*, 603 F.
> Supp. 339, 341 (S.D.N.Y. 1985) (noting that "[t]he general principle is that a corporate
> officer who participates in a tort, even if it is in the course of his duties, may be held
> individually responsible"); *Key Bank of New York v. Grossi*, 227 A.D.2d 841, 843, 642
> N.Y.S.2d 403, 404 (3d Dept. 1996) (corporate officers may be personally liable for
> commissions of torts "even if the commission or participation is for the corporation's
> benefit").

*In re A.N. Frieda Diamonds, Inc.*, 616 B.R. at 318.

company's two sole shareholders and officers could be liable for conversion because he "participate[d] in [the] tort, even [though] it [wa]s in the course of his duties on behalf of the corporation" (quoting *Jami Mrtg. Servs., Inc. v. Howard*, 1988 WL 46106, at *3 (E.D.N.Y. Apr. 26, 1988))); *New York v. Shore Realty Corp.*, 759 F.2d 1032, 1052 (2d Cir. 1985) (holding individual liable for abatement of a nuisance without piercing the corporate veil and declining to "address whether he is liable merely as an officer of [the corporation], for it is beyond dispute that [he] specifically directs, sanctions, and actively participates in [the corporation's] maintenance of the nuisance").  Accordingly, the bankruptcy court's imposition of personal liability against R. Rubinov is affirmed.

## CONCLUSION

Based on the foregoing, the judgment of the bankruptcy court is AFFIRMED in its entirety. The Clerk of Court is respectfully requested to close the case.

**SO ORDERED.**

**Date:  September 30, 2021**
      **New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**